UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO.: 06-21267-CIV-COOKE/BROWN

DEVELOPERS SURETY AND INDEMNITY
COMPANY, a California corporation,

      Plaintiff,

v.

HARDING VILLAGE, LTD., a Florida
limited partnership,

      Defendant.
_____/

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS

**THIS CAUSE** is before the Court upon Defendant Harding Village, Ltd.'s Motion to Dismiss (DE 6), filed June 12, 2006. Plaintiff Developers Surety and Indemnity Company filed its opposition on July 14, 2006. Defendant Harding Village Ltd. filed its reply on July 20, 2006. The Court having reviewed the Motion finds, for the reasons set forth below, that Defendant Harding Village, Ltd.'s Motion to Dismiss should be denied.

    **I.**    **BACKGROUND**

Plaintiff Developers Surety and Indemnity Company ("Plaintiff" or "Developers") filed this declaratory judgment action on May 18, 2006. In its Complaint, Developers alleges that Defendant Harding Village, Ltd. ("Defendant" or "Harding") was the owner of a construction project known as Harding Village Alterations located at 8500-8540 Harding Avenue in Miami Beach, Florida. Developers contends that the Harding Village Alterations project ("the Project") consisted of the renovation of three two-story mid rise residential buildings for the primary

-1-

occupancy of low income and previously homeless individuals. Developers avers that Harding's construction of the Project was dependent upon funding from the Miami-Dade County Housing Agency, National Equity Fund, Florida Housing Finance Corporation, and the City of Miami. According to Developers, the Project's funding was contingent upon compliance with various documents and agreements such as the Land Use Restriction Agreement, the Declaration of Restrictive Covenants, and the Universal Application.

Developers alleges that Harding contracted with Carib Construction, Corp. ("Carib") for the performance of certain construction or rehabilitation work for the Project (the "Carib Contract"). Developers avers that in connection with the Carib Contract it issued Performance Bond No. 532228P (the "Bond"), on behalf of Carib as principal, to Harding as the obligee. Developers alleges that its obligations under the Bond arose after: (1) the owner (i.e. Harding) notified the contractor and the surety that it was considering declaring a contractor default; (2) the owner declared a contractor default and formally terminated the contractor's right to complete the contract; or (3) the owner agreed to pay the balance of the contract price to the surety in accordance with the terms of the construction contract. Developers avers that the Bond incorporated the Carib Contract by reference. Developers contends that the Carib Contract entitled Harding to recover liquidated damages from Carib in the amount of $425.00 per day until substantial completion is achieved, however, Developers contends that the liquidated damages provision was expressly modified to establish that the $425.00 per day liquidated damage was due to the loss of certain economic and tax benefits including low income housing tax credits. Thus, Developers argues that the liquidated damages provision is conditioned upon Harding's loss of the low income housing tax credit.

Developers alleges that in September of 2005, certain funding agencies withheld and/or froze funds previously available for construction of the Project due to Harding's misconduct. Developers avers that in November of 2005, Carib began making demands upon Harding to furnish sufficient evidence to establish that financial arrangements had been made to fulfill the owner's obligations under the Carib Contract. Additionally, Developers contends that the furnishing of sufficient evidence of financial arrangements was a condition precedent to Carib's performance under the Carib Contract. Developers alleges that Harding failed and/or refused to provide Carib with reasonable evidence that financial arrangements had been made to fulfill the owner's obligation under the Carib Contract. Instead, according to Developers, in January of 2006 Harding terminated Carib under the Carib Contract and made demand upon Developers for performance under the Bond. Moreover, Developers alleges that in its subsequent demands for performance under the Bond, Harding represented that there remained $377,798.41 as Contract balances but that it was withholding $180,625.00 as liquidated damages, that it was contesting approximately $70,000 to $80,000 in Contract extras performed by Carib, and that it was setting-off other credits and back charges against the Contract balances. Developers brought this action to seek a declaration of the Parties rights under the Bond. Furthermore, Developers contends that Harding's alleged breach of the Carib Contract and Bond renders the Bond void and excuses Developers from performing under the Bond.

## II.    MOTION TO DISMISS STANDARD

"[W]hen considering a motion to dismiss, the court must accept all allegations of fact as true and should only dismiss when it appears to a certainty that the plaintiff would not be entitled to relief under any state of facts which could be proven in support of his claim." Solis-Ramirez

v. U.S. Dept. of Justice, 758 F.2d 1426, 1429 (11th Cir. 1985) (citing Holt Civic Club v. City of Tuscaloosa, 439 U.S. 60, 65-66 (1978)). See Duke v. Cleland, 5 F.3d 1399, 1402 (11th Cir. 1993). A court may dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action. Marshall Cty. Bd. of Educ. v. Marshall Cty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir.1993). However, "the Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47-48 (1957).

### III. PROCEDURAL HISTORY

Harding filed its Motion to Dismiss on June 12, 2006. Developers filed its opposition on July 14, 2006. Harding filed its reply on July 20, 2006. Thus, Harding's Motion to Dismiss is ripe for adjudication.

### IV. ANALYSIS

In its Motion, Harding argues that this case should be dismissed because: (1) this case is an impermissible effort on Developers' part to seek an advisory opinion from this Court; and (2) Developers' claim is not ripe.[1] The Court will address each of these contentions in turn.

---

[1] Additionally, Harding contends that it will be prejudiced if Developers is permitted to delay completion of the Project through this action. Notably, Harding did not provide this Court with any caselaw or other authority to support the contention that this Court may dismiss this action simply because it may cause hardship to Harding. Moreover, as will be discussed below, this action is ripe for judicial review and satisfies the Declaratory Judgment Act's actual controversy requirement. Therefore, dismissal of this action simply due to the alleged hardship which may result to Harding would be baseless, unjust, and inequitable. The Court, therefore,

### A. THE DECLARATORY JUDGMENT ACT'S ACTUAL CONTROVERSY REQUIREMENT IS SATISFIED

The federal courts are confined by Article III of the Constitution to adjudicating only actual "cases" and "controversies." Malowney v. Federal Collection Deposit Group, 193 F.3d 1342, 1346 (11th Cir. 1999) (citing Allen v. Wright, 468 U.S. 737, 750 (1984)). The Article III case or controversy requirement sets fundamental limits on the federal judiciary's power. Id. One of the most important of these constitutionally-based limits is the requirement that a litigant have "standing" to invoke the power of a federal court. Id. "'In essence, the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues.'" Id. (quoting Warth v. Seldin, 422 U.S. 490, 498 (1975)). In order to demonstrate that a case or controversy exists to meet the Article III standing requirement when a plaintiff is seeking injunctive or declaratory relief, a plaintiff must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future. Id. at 1346-47 (citing City of Los Angeles v. Lyons, 461 U.S. 95, 102 (1983); Cone Corp. v. Florida Dep't of Transp., 921 F.2d 1190, 1205 (11th Cir.1991)).

The Declaratory Judgment Act, 28 U.S.C. § 2201, specifically provides that a declaratory judgment may be issued only in the case of an "actual controversy." 28 U.S.C. § 2201. Thus, the Declaratory Judgment Act is consistent with Article III's case and controversy requirement. Id. at 1347 (citing Emory v. Peeler, 756 F.2d 1547, 1551-52 (11th Cir.1985)). To satisfy the case and controversy requirement, there must be a substantial continuing controversy between two

---

declines Harding's invitation to do so.

adverse parties. "'The plaintiff must allege facts from which the continuation of the dispute may be reasonably inferred. Additionally, the continuing controversy may not be conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative threat of future injury.'" Id. at 1347 (quoting Peeler, 756 F.2d at 1551-52). "The difference between an abstract question and a 'controversy' contemplated by the Declaratory Judgment Act is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy. Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273 (1941) (citing Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 239-42 (1937). "'The remote possibility that a future injury may happen is not sufficient to satisfy the 'actual controversy' requirement for declaratory judgments.'" Malowney, 193 F.3d at 1347 (quoting Peeler, 756 F.2d at 1552). "The party who invokes a federal court's authority must show, at an irreducible minimum, that at the time the complaint was filed, he has suffered some actual or threatened injury resulting from the defendant's conduct, that the injury fairly can be traced to the challenged action, and that the injury is likely to be redressed by favorable court disposition." Atlanta Gas Light Co. v. Aetna Cas. and Sur. Co., 68 F.3d 409, 414 (11th Cir. 1995) (citations omitted).

  As previously discussed, Developers brought this action seeking a declaration that the Bond is void. In the Complaint, Developers asserts: (1) that Harding made demand upon it for performance under the Bond; and (2) that Harding failed to comply with the conditions precedent

to Developers' performance under the Bond and thereby breached the Bond. These assertions are sufficient to establish that Developers has alleged a genuine dispute between itself and Harding. Again, Developers alleges Harding breached the Bond thereby rendering it void while Harding contends that Developers breached the Bond. Moreover, the dispute is not hypothetical, conjectural, or remote as Developers alleges that Harding has already demanded performance under the Bond. See Compl. Furthermore, in its Supplemental Filing to its Motion to Dismiss, Harding threatened that it will file a third-party claim against Developers in the case currently pending in Miami-Dade County Circuit Court between Carib and Harding.[2] See Supplemental Filing at ¶ 4. Therefore, Harding's contention that there is no actual controversy present in this action is unavailing.

### B. THERE IS SUFFICIENT INJURY TO MAKE THIS MATTER RIPE

Next, Harding argues that the injuries which Developers alleged are insufficient to make this matter ripe for judicial review. Harding, specifically, argues that the only injury which Developers "stands to suffer is to comply with the terms of the Performance Bond, which it agreed to do upon issuance of the Performance Bond in relation to the project." Mot. at 4. Thus,

---

[2]In its Supplemental Filing, Harding requests that this Court find that there is no justiciable case or controversy in this action because Counsel for Developers sent Harding a letter in which it agreed to perform under the Bond in an effort to mitigate potential damages. See Supplemental Filing. However, a district court generally must convert a motion to dismiss into a motion for summary judgment if it considers materials outside the complaint. Day v. Taylor, 400 F.3d 1272, 1275-76 (11th Cir. 2005). At this juncture, it would be inappropriate to convert Harding's Motion to Dismiss into a motion for summary judgment, consequently, the Court will not consider the letter attached to Harding's Supplemental Filing. Nevertheless, the Court notes that Developers appears to have reserved its rights to suit within that correspondence.

according to Harding, Developers alleged injuries are insufficient to permit judicial intervention.[3] However, this argument fails.

The ripeness doctrine considers both jurisdictional and prudential concerns. Pittman v. Cole, 267 F.3d 1269, 1278 (11th Cir.2001) (quoting Digital Props., Inc. v. City of Plantation, 121 F.3d 586, 589 (11th Cir.1997) (citing Johnson v. Sikes, 730 F.2d 644, 648 (11th Cir.1984))). Article III of the United States Constitution limits the jurisdiction of the federal courts to cases and controversies of sufficient concreteness to evidence a ripeness for review. Digital Properties, Inc., 121 F.3d at 589 (citations omitted). The ripeness doctrine prevents the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements. Id. See Abbott Laboratories v. Gardner, 387 U.S. 136, 148-49 (1967), overruled on other grounds by, Califano v. Sanders, 430 U.S. 99 (1977)). The ripeness inquiry requires a determination of: (1) the fitness of the issues for judicial decision; and (2) the hardship to the parties of withholding court consideration. Abbott Lab., 387 U.S. at 149; Cheffer v. Reno, 55 F.3d 1517,

---

[3] To support this contention, Harding relies upon Ohio Casualty Insurance Co. v. East Central College, No. 4:05-744JCH, 2005 WL 3053701 (E.D. Mo. Nov. 15, 2005), an unpublished opinion from the Eastern District of Missouri. However, even if this Court ignores the fact that Ohio Casualty is an unpublished opinion from outside of this jurisdiction, Ohio Casualty is not persuasive authority as it is not analogous to the present action. In Ohio Casualty, the court found the surety's injury to be speculative because the surety had yet to investigate the bondholder's claim or make a determination as to whether it would pay the claim. Furthermore, in Ohio Casualty there were no threats of suit lodged against the surety. Consequently, in Ohio Casualty it was apparent that the surety's alleged injuries were simply speculative. But in the present action Developers injuries are concrete. In its Complaint, Developers alleges that it demanded that Harding perform conditions precedent under the Bond and alleges that Harding breached those conditions precedent which allegedly frustrated Developers' ability to exercise its options under the Bond. See Compl. Moreover, in the present action, Harding has already threatened suit against Developers for failure to perform under the Bond. Thus, the present action is far different from the situation in Ohio Casualty where the surety, without sustaining any actual injury, attempted to litigate the merits of a construction dispute under the guise of a declaratory judgment action.

1524 (11th Cir.1995).

Throughout its Complaint, Developers contends that its performance under the Bond was obviated by Harding's alleged breach of the Bond.  See Compl.  Based upon these allegations, it is apparent that the injury which Developers may suffer is not simply limited to being required to perform under the Bond.  Instead, Developers' injuries include Harding's alleged breach of the Bond as well as the frustration which Developers allegedly incurred as a result of Harding's alleged breach.  Moreover, the injury in question is concrete and imminent as Harding has already threatened suit against Developers for failure to perform under the Bond.  If this Court were to find these injuries to be insufficient then it could create a repugnant precedent in which declaratory judgment actions, involving allegations of breach of contract, could be defeated for lack of sufficient injury.  The Court, therefore, finds that Developers' has pled sufficient injuries to make this claim ripe for judicial review.

### V. CONCLUSION

For the reasons set forth above it is hereby

**ORDERED AND ADJUDGED** that Defendant Harding Village, Ltd.'s Motion to Dismiss (DE 6) is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 9th day of February, 2007.

_____
MARCIA G. COOKE
United States District Judge

*Copies furnished to:*

*All Counsel of Record*